William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Ave., Suite 1500
New York, New York 10017
(Phone) (212) 286-1425; (Fax)(646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

|  |  |  |
|---|---|---|
| MILES MARILLO, | : ECF | |
| Individually and on Behalf of All Other | : 18 Civ. 09930 (VEC) | |
| Persons Similarly Situated, | : | |
|  | : | |
| Plaintiff, | : | **AMENDED** |
|  | : | **COMPLAINT AND** |
| -against- | : | **JURY DEMAND** |
|  | : | |
| TATMAR REST., INC., d/b/a "Quartorze Bis Restaurant", | : | |
| MARK DIGUILIO, ALEX MCNEICE, and | : | |
| JOHN DOES #1-10, | : | |
|  | : | |
| Defendants. | : | |

---------------------------------------------------------------------X

Plaintiff Miles Marillo ("Plaintiff"), on behalf of himself individually and as class representative of other employees similarly situated, by and through his attorneys, complains and alleges for his Amended Complaint against defendants TATMAR REST., INC. d/b/a "Quartorze Bis Restaurant", Mark DiGuilio, Alex McNeice and John Does #1-10 (together "Defendant") as follows.

## NATURE OF THE ACTION

1.      This is a case in which Plaintiff and the other members of the putative class worked numerous hours as wait staff employees for Defendants and were not paid their share of tips and were not paid their proper wages, minimum wages, overtime wages and spread of hour wages by Defendant.

2.       Plaintiff alleges on behalf of himself and other similarly situated current and former employees of the Defendants who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they are: (i) entitled to unpaid wages from Defendant for work for which they did not receive minimum wage, (ii) entitled to unpaid overtime wages for overtime work for which they were not paid time and one half their regular hourly wage rate, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 *et seq.*

3.       Plaintiff further complains on behalf of himself, and a class of other similarly situated current and former employees of the Defendant who were employed as wait staff or similar positions with different titles, pursuant to Fed. R. Civ. P. 23, that they are entitled to back wages from Defendant for work performed for which they were not paid proper wages including minimum wages and spread of hour wages, and for overtime work for which they did not receive time and one half their regular hourly wage rate, as required by the New York Labor Law §§ 650 *et seq.* and the supporting New York State Department of Labor regulations.

4.       Plaintiff also complains that Defendants failed to provide to him and the Class notice of each Class member's rate of pay and the name of each class member's employer in violation of the NYLL§ 195(1), and is therefore each Class member is entitled to $50 dollars for each workday in which the violations occurred or continued to occur on or after April 9, 2011, or a maximum total of $5,000, as provided for by NYLL § 198(1)-b, as well as reasonable attorneys' fees, costs, injunctive and declaratory relief.

5.       Plaintiff also complains that him and Class members' paystubs did not provide notice of the hours worked by her and class members and their correct legal rate of pay and accordingly she and the class members, as a result of violations of the NYLL § 195(3), are

2

each entitled to recover from Defendant $250 for each workday on or after April 9, 2011, on which the violations occurred or continue to occur, or a total of $5,000, as provided for by NYLL § 198(1)-d.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7.      Venue is proper in this district pursuant to 28 U.S.C. §1391.

8.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

9.      Plaintiff MILES MARILLO was, at all relevant times an adult individual residing in Kings County, New York.

10.      Upon information and belief, Defendant TATMAR REST., INC. d/b/a "Quartorze Bis Restaurant",  (the "Corporate Defendant") is a domestic limited liability company organized and existing under the laws of the State of New York whose principal place of business is at 323 E 79th St, New York, NY 10075-0922.  Upon information and belief, it operates the restaurant named "Quatorze Bis" at 323 E 79th St, New York, NY 10075-0922.

11.      Upon information and belief, Defendant MARK DIGIULIO is the Chief Executive Officer of the Corporate Defendant and owns more than 10% of the Corporate Defendant and has owned more than 10% of the corporate Defendant during the last 6 years,

3

and has been one of the ten largest owners of the Corporate Defendant during the time period that the Named Plaintiff worked for the Defendant.

12.    On September 18, 2018, the Named Plaintiff Miles Marillo by his attorney mailed a notice of personal liability under Section 630 et seq. of the New York Corporate Law to MARK DIGIULIO at the address: Mr. Mark Digiulio, Owner, Tatmar Rest., Inc. d/b/a Quatorze Bis Restaurant, 323 E 79th St., New York, N.Y. 10075-0922.

13.    Upon information and belief, during the last 6 years, Defendant Alex McNeice has been the Manager of the Corporate Defendant.

14.    Defendants Mark DiGiulio and Alex McNeice and JOHN DOES #1-10 (the "Individual Defendants") participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and are "employers" pursuant to the New York Labor Law Sec. 2 and the regulations thereunder and are jointly and severally liable with the Corporate Defendant.

15.    The Individual Defendants during the last six years were responsible for hiring and firing and scheduling and paying the wait staff employees of the Corporate Defendant.

16.    Upon information and belief, during the last six years, the Individual Defendants had authority over the management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendant's wait staff employees and other employees and their decisions directly affected the nature and condition of the wait staff employees' employment.

17.    Upon information and belief, during the last six years, the Individual Defendants  (1) had the power to hire and fire the employees of the Corporate Defendant, (2) supervised and controlled the employees' schedules and conditions of employment, (3)

4

determined the rate and method of payment of the employees, and (4) maintained employment records related to the employees.

18.    Upon information and belief,  the Individual Defendants represent the officers, directors and/or managing agents of the Corporate Defendant, whose identities are unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and are "employers" pursuant to the New York Labor Law Sec. 2 and the regulations thereunder and are jointly and severally liable with the Corporate Defendant.

19.    Each Individual Defendant participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and is an "employer" pursuant to the New York Labor Law Sec. 2 and the regulations thereunder and are jointly and severally liable with the Corporate Defendant.

20.    Upon information and belief, during the last six years, each Individual Defendant had authority over the management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendant's wait staff employees and other employees and his decisions directly affected the nature and condition of the wait staff employees' employment.

21.    Upon information and belief, during the last six years, each Individual Defendant  (1) had the power to hire and fire the wait staff employees of the Corporate Defendant, (2) supervised and controlled the wait staff employees' schedules and conditions of employment, (3) determined the rate and method of payment of the wait staff employees, and (4) maintained employment records related to the wait staff employees.

## COLLECTIVE ACTION ALLEGATIONS

22.     Pursuant to 29 U.S.C. §207, Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendant as wait staff employees or similar positions with different titles at any time since October 28, 2002 to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA and who were not paid minimum wage for hours worked and were not paid overtime for time worked over forty hours in a week (the "Collective Action Members").

23.     This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there are at least 40 members of the Class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

24.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with the members of this collective action.

25.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible

for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

26.    Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are

> a.  whether the Defendant employed the Collective Action members within the meaning of the FLSA;
>
> b.  whether the Defendant failed to keep true and accurate time records for all hours worked by Plaintiffs and the Collective Action Members;
>
> c.  what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;
>
> d.  whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiffs are employed, in violation of C.F.R. § 516.4;
>
> e.  whether Defendant failed to pay the Collective Action Members minimum wage for hours worked and time and one half wages for overtime hours worked in violation of the FLSA and the regulations promulgated thereunder;
>
> f.  whether Defendant improperly distributed wait staff tips to non-wait staff employees and whether as a result Defendant is legally permitted to reduce wages by the "tip credit";

g.   whether Defendant's violations of the FLSA are willful as that term is used within the context of the FLSA;

h.   whether Defendant is liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

i.   whether Defendant should be enjoined from such violations of the FLSA in the future.

27.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## CLASS ALLEGATIONS

28.    Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

29.    Plaintiffs bring their New York Labor Law claim on behalf of all persons who were employed by Defendant as wait staff employees, or similar positions with different titles at any time since the date 6 years prior to the filing of this Complaint, to the entry of judgment in this case (the "Class Period"), who were non-exempt employees within the meaning of the New York Labor Law and have not been paid wages, including the statutory minimum wages and/or overtime wages, for their hours worked and/or have not been paid for their spread of hours wages for their time worked a spread of more than ten hours in a day and/or have not been paid their proper share of tips, in violation of the New York Labor Law and/or have not received proper Wage Theft Prevention Act notice (the "Class"). *See Samiento v. World Yacht Inc.*,10 N.Y.3d 70 (2008).

30.     The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there are at least 40 members of Class.

31.     The claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

32.     The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

33.     Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in employment law and class action litigation.

34.     Plaintiffs have the same interests in this matter as all other members of the class and Plaintiffs' claims are typical of the Class.

35.     There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a.      whether the Defendant employed the members of the Class within the meaning of the New York Labor Law;

b.      whether the Defendant failed to keep true and accurate time records for all hours worked by Plaintiffs and members of the Class;

9

c.      what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.      whether Defendant failed and/or refused to pay the members of the Class wages, including minimum wages, spread of hours wages and overtime wages, for all hours worked within the meaning of the New York Labor Law;

e.      whether Defendant failed and/or refused to pay the members of the Class their proper share of tips as required by the New York labor law;

f.      whether the Defendant is liable for all damages claimed hereunder, including but not limited to compensatory damage, interest, costs and disbursements and attorneys' fees; and

g.      whether the Defendant should be enjoined from such violations of the New York Labor Law in the future.

**STATEMENT OF FACTS**

36.      Plaintiff MILES MARILLO ("MARILLO"") worked for Tatmar Rest., Inc. d/b/a Quatorze Bis Restaurant ("Defendant") as a waiter from about October 25, 2017 until about September 3, 2018 (the "time period").

37.      Plaintiff MARILLO worked at the restaurant called Quatorze Bis located at 323 E 79th St, New York, NY 10075-0922.

38.      During the time period, Marillo was scheduled and worked days shifts from 10:00 a.m. to 4:00 p.m. or later and night shifts, which were either the early night shift from 4:00 p.m. to 10:00 p.m. or later, or the later night shift from 6:00 p.m. to 12:00 a.m. midnight or later.

39.     During the time period, Marillo often worked double shifts and during certain weeks when requested worked more than 40 hours per week.

40.     During the time period, Plaintiff Marillo's shifts varied but Marillo generally worked at least once a week a double shift which included work a spread of more than 10 hours apart.

41.     During the time period, Marillo and similar waiters were required to work a trial/training shift for 4 hours before being hired for which we were not paid any tips or wages.

42.     During the time period, Marillo and the other waiters often worked 15 to 30 minutes past the end of our shifts but were never paid any wages for these post shift hours.

43.     During the time period, Marillo and the other waiters often worked part of a shift up to 2 hours and were not paid any hours or tips for the shift.

44.     During the time period, Marillo and the other waiters worked more than 40 hours per week but were not paid time and one half their regular wage rate for the hours over forty that they worked ("overtime hours").

45.     During the time period, Marillo and the other waiters worked a spread of more than 10 hours and were not paid an extra hour of pay.

46.     During the time period, Marillo and the other waiters worked double shifts which included working a spread of more than ten hours and were not paid an extra hour at minimum wage for this work ("spread of hours wage").

47.     On or about April 25, 2018, Defendants admitted he had failed to pay spread of hours wages and commenced paying spread of hours wages.

48.     Defendant paid each current waiter employee including myself a one time payment by check on or about April 25, 2018 for the spread of hours wages that Defendant

alleged we were owed since January 1, 2018.

49.     Upon information and belief, the one time payment by check for spread of hours wages was not paid to waiter employees who were not currently employed on April 25, 2018.

50.     Defendant falsely claimed that the obligation to pay spread of hours wages were the result of a new statute commencing January 1, 2018.

51.     Defendant never paid any spread of hours wages prior to January 1, 2018.

52.     Marillo was paid the amount on the paystubs listed as tips in cash without withholding and was not paid the hourly amounts listed on the paystubs which were paid as withholding on the tip amount.

53.     During the time period, Marillo and the other waiters were not paid any wages for our 4 hour training shift prior to commencing work.

54.     During the time period, Defendant pooled the tips paid by the customers to the waiters which were split among the manager, bar tenders and waiters.

55.     The tips were illegally paid to the managers, including General Manager Alex McNiece and Manager Alycia Citell.

56.     The night tips were divided 5% to the Manager, 7% to the Bar Tender, and 88% equally to the waiters.

57.     The day tips were divided 10% of the tips of each waiter over $100 to the Manager and the remainder to the waiters equally.  No bar tender worked the day shift.

58.     The tip pooling records were kept in the Manager's office.

59.     Waiters and bar tenders all received their share of the tip pool in cash at the end of each shift.

60.    During the time period, Marillo worked with about 5 waiters during each night shift.

61.    During the time period, there was high turnover at the restaurant.

62.    Upon information and belief, Defendants have employed at least 40 wait staff employees in the past three years.

63.    Upon information and belief, during the past three years, there have been at least 40 employees similar to myself, who have not been paid minimum wages for all their hours worked and have not been paid time and one half the minimum wage rate for their hours worked over forty hours per week.

64.    Marillo's duties as a waiter did not include managerial responsibilities or the exercise of independent business judgment.

65.    Marillo did not have the power to hire or fire employees.

66.    Marillo and the other similar wait staff employees during certain weeks of the time period worked more than 40 hours per week for Defendants.

67.    During the last 3 years and last 6 years, Marillo and these other similar wait staff employees at times worked more than 40 hours per week and were not paid overtime wages at time and one half, were not paid an extra hour of pay for spread of hours wages when we worked lunch and dinner shifts spread apart more than 10 hours, were not paid for time working after the end of our scheduled shifts, were not paid a portion of our tips which were illegally paid to the managers, and were not paid for their training shift prior to commencing work.

68.    Marillo knows that others like him were not paid proper wages by Defendant because Marillo frequently discussed the issue with these other similar wait staff employees,

including but not limited to Sandra Ardaya, Coumba Diouf, Ben Culpepper, Ilir Ahmetaj, Uri Kaweblum, Henry Lishnoff, Diego Dussan, James Crane, Catherine Bryant, and Eric Cosentino, who all said that they worked as employees for Defendant and at times worked more than 40 hours per week and indicated that they were not paid overtime wages at time and one half, were not paid an extra hour of pay for spread of hours wages when they worked lunch and dinner shifts spread apart more than 10 hours, were not paid for time working after the end of their scheduled shifts, were not paid a portion of their tips which were paid to the managers, and were not paid for their training shift prior to commencing work.

69.     Throughout the time period that Marillo worked for Defendant, and, upon information and belief, both before that time and continuing until the present, Defendants have likewise employed other individuals, like Marillo, in wait staff positions as waiters.

70.     Such individuals have worked on an hourly basis and during certain weeks worked in excess of 40 hours, yet the Defendants have likewise willfully failed to pay them minimum wages for all hours worked and overtime compensation of time and one-half their regular hourly rate for their hours worked over 40 in a week.

71.     During the time period, upon information and belief, PLAINTIFF and the similar waiters employees of Defendant were not specifically notified by Defendants of the regular pay day designated by Defendant, Defendant's name, address and principle place of business and telephone number and our specific rate of pay as required by the New York Wage Theft Prevention Act.  PLAINTIFF has not been given any specific notice of this information to sign in English and have not signed any such notice.

72.     Upon information and belief the other waiter employees also were not given such notice.

**FIRST CLAIM FOR RELIEF**
**Fair Labor Standards Act**

73.     Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

74.     At all relevant times, Defendant has been and continues to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

75.     At all relevant times, Defendant employed, and/or continues to employ, Plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

76.     Upon information and belief, at all relevant times, Defendant has had gross revenues in excess of $500,000.

77.     Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).  Each named Plaintiff's written consent is attached hereto and incorporated by reference.

78.     At all relevant times, the Defendant had a policy and practice of refusing to pay any monies for the hours worked by Defendant's employees and refusing to pay overtime compensation to its employees for their hours worked in excess of forty hours per workweek.

79.     As a result of the Defendant's willful failure to compensate its employees, including Plaintiffs and the Collective Action members, at the minimum and overtime wage rate for all hours worked, the Defendant has violated and, continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 203(m), 207(a)(1) and 215(a).

80.     As a result of the Defendant's failure to record, report, credit and/or

compensate its employees, including Plaintiffs and the Collective Action members, the Defendant has failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

81.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

82.     Due to the Defendant's FLSA violations, Plaintiffs and the Collective Action Class are entitled to recover from the Defendant, their unpaid wages, an additional amount equal as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

### SECOND CLAIM FOR RELIEF
New York Labor Law Minimum Wage
**(Brought by Plaintiff, Individually and on Behalf of the Class)**

83.     Plaintiff, on behalf of himself and the Class Members, realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

84.     Title 12 NYCRR § 142-2.1 states that, "(a) [t]he basic minimum hourly rate shall be: (1) $7.25 per hour on and after July 24, 2009; (2) $8.00 per hour on and after December 31, 2013; (3) $8.75 per hour on and after December 31, 2014; (4) $9.00 per hour on and after December 31, 2015 . . . ."

85.     NYLL § 663 provides that, "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees."

16

86.    At all relevant times to this action, Plaintiffs were Defendants' employees within the meaning of New York Labor Law §§ 190(2) and 651(5) and 12 NYCRR § 142-2.14.

87.    At all relevant times the Defendants were employers of the Plaintiffs within the meaning of New York Labor Laws §§ 190(3) and 651(6).

88.    At all relevant times to this action, Defendants failed to pay Plaintiffs the statutory minimum wage for all hours worked in violation of New York Labor Law § 652 and 12 NYCRR § 142-2.1.

89.    Defendants willfully violated the rights of Plaintiffs by failing to pay them wages due and owing for work performed in violation of New York State Labor Law.

90.    It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying the required minimum wage rates for all hours worked and overtime premiums for all hours worked in excess of forty (40) hours in any workweek.

91.    Throughout the Class Period, Defendant willfully, regularly, repeatedly and knowingly violated the Plaintiff's and the Class Members' rights by failing to pay them compensation at the required minimum wage rates for all hours worked as well as overtime compensation at the required overtime rates for all hours worked in excess of forty (40) hours per workweek, in violation of the NYLL and its regulations.

92.    As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiff and the Class Members have sustained damages, including loss of earnings, in an amount to be established at trial.

93.    Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to

17

recover from Defendants their unpaid minimum wages, in an amount to be determined at trial, plus interest, attorneys' fees pursuant to New York Labor Law §§ 190 et seq., and §§ 650 et seq., and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
### New York Labor Law Failure to Pay Wages
### (Brought by Plaintiff, Individually and on Behalf of the Class)

89.    Plaintiff, on behalf of himself and the Class Members, realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

90.    Pursuant to the Article Six of the New York Labor Law, workers, such as the Plaintiffs are protected from wage underpayments and improper employment practices.

91.    Pursuant to Labor Law § 191 and the cases interpreting same, workers such as Plaintiffs are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which the wages are earned."

92.    Pursuant to Labor Law § 193, "No employer shall make any deduction from the wages of an employee," such as Plaintiffs and the putative class members, that is not otherwise authorized by law or by the employee.

93.    Defendants have failed to pay Plaintiffs all wages due, including minimum wages and overtime wages, as well as wages under the NY Home Care Worker Wage Parity Act, for the hours they each worked for Defendants.

94.    By withholding wages and overtime payments for time worked after forty hours in one week from Plaintiffs, pursuant to New York Labor Law § 193 and the cases interpreting same, Defendants made unlawful deductions in wages owed to Plaintiffs.

95.    Defendants' failure to comply with the NYLL caused Plaintiffs to suffer

18

loss of wages and interest thereon.

96.    Defendants' failure to comply with the NYLL was willful.

97.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid wages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### FOURTH CLAIM FOR RELIEF
### New York Labor Law Overtime Wages
### (Brought by Plaintiff, Individually and on Behalf of the Class)

98.    Plaintiff, on behalf of himself and the Class Members, realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

99.    It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work more than 40 hours in a workweek ("overtime hours") without paying the required overtime wages for the overtime hours worked.

100.    Throughout the Class Period, Defendant willfully, regularly, repeatedly and knowingly violated the Plaintiff's and the Class Members' rights by failing to pay them compensation at the required overtime compensation at the required overtime rates for all hours worked in excess of forty (40) hours per workweek, in violation of the NYLL and its regulations.

101.    As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiff and the Class Members have sustained damages, including loss of earnings, in an amount to be established at trial.

102.    Due to Defendant's NYLL violations, Plaintiff, on behalf of himself and the Class Members, seeks damages in the amount of their respective unpaid overtime compensation, pre-judgment and post-judgment interest, and attorneys' fees and costs, pursuant to the NYLL, and

such other legal and equitable relief as this Court deems just and proper.

## FIFTH CLAIM FOR RELIEF
### New York Labor Law Failure to Pay Spread of Hours Wages
### (Brought by Plaintiff, Individually and on Behalf of the Class)

103.    Plaintiff, on behalf of himself and the Class Members, realleges and incorporates by reference all previous paragraphs.

104.    Plaintiff and the Class Members regularly ended their workday more than ten (10) hours after the beginning of their workday.

105.    Throughout the Class Period, Defendant willfully and intentionally failed to compensate Plaintiff and the Class Members additional compensation of one hour's pay at the basic New York minimum hourly wage rate for each day that the interval between the beginning and end of their workday was greater than ten (10) hours, as required by the NYLL and implementing regulations.

106.    By virtue of Defendant's failure to pay Plaintiff and the Class Members spread-of-hours pay, Defendant has violated the NYLL and its regulations.

107.    As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiff and the Class Members have sustained damages, including loss of earnings and improper tip credits applied to reduce their wages, in an amount to be established at trial.

108.    Due to Defendant's NYLL violations, Plaintiffs, on behalf of themselves and the Class Members, seek damages in the amount of their respective unpaid spread of hours wages, unpaid minimum wages (tip credit improperly taken), pre-judgment and post-judgment interest, attorneys' fees and costs, pursuant to the NYLL, and such other legal and equitable relief as this Court deems just and proper.

## SIXTH CLAIM FOR RELIEF
### Unjust Enrichment
### (Brought by Plaintiff Individually and on Behalf of the Class)

109.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

110.    Defendants are liable to the Plaintiff and the Class under the common law doctrine of "unjust enrichment."

111.    Defendants, by their policies and actions, benefited from, and increased their profits and personal compensation by failing to pay Plaintiff and the Class: (1) all wages due for work performed; (2) an extra hour at the minimum wage for working a "spread of hours" in excess of 10 hours or a shift longer than 10 hours; and (3) all minimum wages due under the New York Labor Law.

112.    Defendant accepted and received the benefits of the work performed by Plaintiff and the Class at the expense of Plaintiff and the Class.  It is inequitable and unjust for Defendants to reap the benefits of Plaintiff's and the Class's labor, without paying all wages due.

113.    Plaintiff and the members of the Class provided services to Defendants for which Defendants understood that they were obligated to pay wages.

114.    Defendants did not pay wages for the services provided by Plaintiffs.

115.    Defendants were unjustly enriched at the expense of Plaintiffs.

116.    Plaintiff and the Class are entitled to relief for this unjust enrichment in an amount equal to the benefits unjustly retained by Defendant, plus interest on these amounts.

## SEVENTH CLAIM FOR RELIEF
### Breach of Contract-Failure to Pay Wages
### (Brought by Plaintiff, Individually and on Behalf of the Class)

117.    Plaintiff, on behalf of himself and the Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs as if they were set forth again herein.

118.    Plaintiff and the Class entered into employment contracts with Defendants under which Plaintiffs agreed to provide wait staff services and Defendants agreed to pay wages.

119.    Plaintiff and the class satisfied their obligation to provide wait staff services under the contracts.

120.    Defendants breached the contracts by failing to pay wages to Plaintiff and the Class as required by the contracts and as required by the New York labor law.

121.    Plaintiffs and the Class suffered material damages as a direct result of Defendants' breach of the contracts.

122.    Accordingly, Plaintiff and the Class now see judgement in the amount of their unpaid wages.

**EIGHTH CLAIM FOR RELIEF**
**(Notice & Wage Statement Violations – NYLL §195, Brought by Plaintiff Individually and as a Class)**

123.    Plaintiff, individually, realleges and incorporates by reference all allegations in all preceding paragraphs as if they were set forth again herein.

124.    Defendant has willfully failed to supply Plaintiff and the Class with the notice required by NYLL § 195(1), in English or in the languages identified by Plaintiff as their primary languages, containing their "rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; allowances, if any, claimed as part of the minimum

22

wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with [NYLL §191]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary."

125.    Defendant has willfully failed to supply Plaintiff and members of the Class with  an accurate statement of wages as required by NYLL § 195(3), containing the "dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

126.    Due to Defendant's violations of the NYLL§ 195(1), Plaintiff and each member of the Class is entitled to $50 dollars for each workday in which the violations occurred or continue to occur, or a total of $5,000, as provided for by NYLL § 198(1)-b, as well as reasonable attorneys' fees, costs, injunctive and declaratory relief.

127.    Due to Defendant's violations of the NYLL § 195(3), Plaintiff and each member of the Class is entitled to recover from Defendant $250 for each workday on or after April 9, 2011, on which the violations occurred or continue to occur, or a total of $5,000, as provided for by NYLL § 198(1)-d.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and members of the Class, respectfully request that this Court grant the following relief:

a.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiffs and their counsel to represent the Class;

b.      An order tolling the statute of limitations;

c.      Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiffs and his counsel to represent the Collective Action members;

d.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

e.      An injunction against the Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

24

f.    An award of wages due under the FLSA and the New York Labor Law;

g.    An award of liquidated and/or punitive damages as a result of the Defendant's

willful failure to pay wages pursuant to 29 U.S.C. § 216 and the New York

Labor Law;

h.    An award of prejudgment and postjudgment interest;

i.    An award of costs and expenses of this action together with reasonable

attorneys' and expert fees; and

j.    Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury on all questions of fact raised by this Complaint.

Dated:  New York, New York
        January 18, 2019

                        LAW OFFICE OF WILLIAM COUDERT RAND


                              s/William C. Rand
                        By: _____
                           William Coudert Rand (WR 7685)

                        501 Fifth Ave., Suite 1500
                        New York, New York 10017
                        Telephone: (212) 286-1425
                        Facsimile: (646) 688-3078

                        **ATTORNEYS FOR PLAINTIFF**

25